This is our third case of the Morning Linn v. IL Dept of Revenue. For the Appellant, Mr. Marcus, for the Appellant, Mr. Siegel, you may proceed. May it please the Court. Good morning. Good morning. As the Board has stated, my name is Fred Marcus, and I represent the Plaintiff Appellant, Lewis Linn, who is a trustee of Autonomy Trust on this appeal. Autonomy Trust is an irrevocable intervivals trust that was created by a declaration of trust in 2002. The trust was funded through a distribution of assets from a separate trust called the P.G. Linda Trust, which was one of 20 trusts created by the grantor under a 1961 trust agreement. To be clear, Autonomy Trust was not created by the 1961 trust agreement. It was created in 2002 by a declaration of trust. This appeal involves a single issue, and the question here is whether the State may tax Autonomy Trust as an Illinois resident. And by that I mean, or what the State can do if Autonomy Trust is an Illinois resident, it may tax 100% of Autonomy Trust's income regardless of where it's earned. So bottom line, it may tax 100% of Autonomy Trust's worldwide income. On the other hand, if Autonomy Trust is not a resident trust, to the extent that Autonomy Trust earned Illinois source income, the State would be entitled to tax that income. So we're not up here objecting to the imposition of a tax. It's the imposition of 100% of the tax to Autonomy Trust as a resident. Now what the State does is it imposes its tax on an Illinois resident trust solely on the basis that the grantor, who died in 1986, was an Illinois resident. The State is asking this court to do this, or to uphold the imposition of the tax in the absence of any contemporaneous connections between the State and the trust, and any contemporaneous benefits or protections afforded to the trust by the State. What do I mean by contemporaneous connections? In this particular case, during the 2006 tax year, Autonomy Trust's sole trustee was a Texas resident who administered the trust from his sole office in Houston, Texas. The trust's only income beneficiary was a Montana resident. The trust's contingent remainderment, the beneficiary's children, were all residents of states other than the State of Illinois. The trust had no Illinois property, and it had no Illinois source income. These facts were true when the trust was formed or created in 2002. They were true in 2006, and they continue to be true today. By the absence of contemporaneous benefits or protections, I mean that in 2006, just like in every year from the date of its creation, Illinois did not provide anything to this trust for which it can ask a return. It was Texas, not the State of Illinois, that provided the trust with all the benefits of a civilized society, such as police and fire protection, a utility and transportation system, an educated workforce, the maintenance of an economic marketplace, and the protection of the State's laws. Under these circumstances, we submit that the State's Taxation of Autonomy Trust as a resident violates the Due Process and Commerce Clauses of the United States Constitution. Let me address the Due Process Clause and the Commerce Clause first. To support taxation under the Due Process Clause, there is a requirement of a definite link or minimum connection between the taxing state and the person, the property, or the transaction it seeks to tax. That's the first prong of the Due Process Clause. The second prong requires that the income attributed to the state for tax purposes be rationally related to the values of the taxpayer connected with the taxing state. Under the Commerce Clause, there is a four-pronged test that we get from the Complete Auto Transit case, the United States Supreme Court decision. Our focus is really on two of those four prongs, and that's the substantial nexus prong. So there must be a substantial nexus between the taxpayer and the state that's seeking to impose its tax, and I would suggest that that standard is somewhat higher than the Due Process Clause minimum connection. The state argues that the trust has an in-state, meaning an Illinois residency. Is that incorrect? Yes, that is incorrect. Why? Because the trust no longer has any contacts. This trust was created as a Texas trust in 2002 pursuant to the trustees' power to distribute assets to a new trust or to the beneficiary directly. They chose to distribute the assets to a new trust, to a Texas trustee who resides in Texas, administers the trust from Texas. There are no other contacts with the state of Illinois, and it's the residency question that we are challenging in this case. What about the panoply of legal benefits and opportunity that Illinois provides the beneficiaries, according to the state? Which beneficiaries are you speaking of? The beneficiaries of the Commerce Clause? The brief identifies Linda Pritzker, Lynn, and others. I would suggest that the state provides absolutely no benefits or protections to the beneficiary of the autonomy trust. She is a Montana resident, and I would suggest that if she came to Illinois in an attempt to bring suit against the trustee, who is a Texas resident, that the court would probably decline to accept jurisdiction. Is my understanding correct that this case involves an assessed efficiency liability of $2,729? That's correct. We've had bigger and more significant cases come before this court. I'm wondering, is this just the first of several, or what's going on? Well, first of all, I think this is a very significant issue. And yes, there are other cases at the Department of Revenue which would be affected by the outcome of this case. A disturbing aspect of this case, Counselor, that I'd like you to address is this. It's been my privilege to be on this court now for 25 years. And in all that time, I've never before seen a case in which an appellant has asked us to file briefs and to conduct this matter under seal. We somehow granted that request, and this panel has now vacated it. But I'm not a happy guy about this. I don't understand what this is all about or what in the world you were thinking to even make such a request. We were concerned about the potential publicity this case would attract because of the people involved. So where is it written, Counsel, that the potential for publicity means that when your clients seek the protections of the public institutions, otherwise known as courts, that they can do so under seal? I would suggest to you, at least in my view, that the right to privacy may supplant the right for the public to know. Do you have any Illinois authority that would so justify such a claim, like in divorce cases or in other civil litigation proceedings? I cannot cite to any authority. Well, you can cite to plenty of authority from this court rejecting that concept in other cases, civil matters. With all due respect, Your Honor, this is a tax case. To the extent that the court declined to continue to leave the protective order in place, so be it. But this is a tax case, and I'm not sure that that issue should impact the outcome of this. No, I'm not suggesting it would. I just want to express my dismay that you would think that these are proceedings which can be proceeded under seal. I appreciate your dismay, and I recognize the point that you are trying to make. Okay. Well, just before we leave that, they were placed under seal with the agreement of the Attorney General? Correct. Well, be sure to ask the Attorney General about that in a moment, too, Counsel. I don't want you to think... His dismay is... I'm not sure Mr. Siegel... Yeah, it's an expansive dismay. If I may. As I indicated, for Commerce Clause purposes, we have the substantial nexus prong of the complete auto transit test. It requires that there be a substantial nexus between the taxpayer and the state, and I would also suggest that it's a somewhat higher standard than the minimum contacts required under the Due Process Clause. And the tax must be fairly related to the services provided by the state. Well, where is... What is the state's interest in this? Why do you think they have pursued this when it is so clear that the nexus isn't there? And there's no dispute about the fact that Texas created their trustee in Texas and so forth? I believe it's because of the statutory definition of a resident trust. It defines a resident trust as a trust that's created by an Illinois grantor that becomes irrevocable at the time he creates the trust. And I think that's the question that we have to deal with here. What happened between 2002 and 2006 or so that there was no action? I would suggest that there was no action... Well, why there was no action between 2002 and 2006, I'm not sure I can answer that question. I really don't know. All I do know is that the facts with respect to the 2006 through 2000... Excuse me, 2002 through 2005 tax years are substantially similar to the facts in the 2006 tax year. I'm involved in the 2006 tax year, and that's really the only tax year that I am concerned about in this case. So as far as we know, those were paid, no actions were filed? Oh, if that's your question, absolutely. Those tax returns were filed, and any taxes due were paid for 2002 through 2005. No question about that. There's no kind of waiver argument, or forfeiture argument? No, each year stands on its own. Okay. Each tax year will stand on its own. Anyway, we believe that the states attempt to tax autonomy trust in the 2006 tax year, and again, it could tax autonomy trust in each year subsequent to 2006, so long as the trust exists. It violates both the due process and the commerce clauses of the U.S. Constitution. First, there is no connection between the trusts. As I've already indicated, whether it be physical or economic, there is no economic connection between this trust and the state of Illinois. That can satisfy the due process clause's minimum context test and the more stringent substantial nexus prong of the commerce clause. And second, I would suggest that Illinois has conferred no benefits or afforded any protections to autonomy trust during the 2006 tax year, or for that matter, to the trust's beneficiary, who is a Montana resident. Nor could the trust or the beneficiary have availed itself of any of these benefits or protections. Really, this prong in the due process test and the commerce clause test considers taxation as a price to be paid for the enjoyment of a civilized society and the maintenance of an economic environment in which the trust earns income, and that just isn't occurring here. Simply stated, I would suggest that the state has not given anything here for which it can ask a return. A couple of examples which might indicate the good sense of these requirements. Let's look at the corporate setting for a moment. Let's assume we have a corporation created in Illinois, domiciled in Illinois. It has two divisions, Division A and Division B. It takes the assets of Division B and it transfers those assets to a newly created Delaware corporation, which is located in Pennsylvania or any other state in which the entity is going to operate other than Illinois. This new entity with these assets that came from the Illinois Domiciliary Corporation has no contact with the state of Illinois and conducts no business in the state of Illinois. I don't think anyone would suggest that Illinois can tax this new corporation simply because it traces the origins of its assets to the original Illinois corporation in the line of business that was conducted in Illinois prior to the creation of this new entity. A second example might be somewhat more understanding to all of us, and I'll use myself as an example. My wife and I are domiciliaries and residents of the state of Illinois. Our daughter was born in the state of Illinois. She resided here until, I can't keep track of which year she left, but she has relocated to San Francisco to become a resident and domiciliary in the state of California. No one would suggest that the state of Illinois would have the right to continue to tax her on any income she earned or on the income from any assets that she may have accumulated in Illinois while she was a domiciliary and resident of the state of Illinois. Is that the position you believe the state is taking with regard to the trustee? Yes, that's exactly what the state is attempting to do here. Let me move on to the circuit court ruling for a moment. The circuit court did really not address any of the facts of this case. Rather, what the court incorrectly held that an Illinois choice of law provision in the 1961 trust agreement that created the P.G. Linda Trust applied to Autonomy Trust. But as I indicated, Autonomy Trust was not created by the 1961 trust agreement. It was created when the trustees of the P.G. Linda Trust transferred the assets to Mr. Lind as trustee of Autonomy Trust. And in fact, the trust instrument itself, governing Autonomy Trust, has its own choice of law provision, and it's Texas, it's not Illinois. Counsel, let me ask you about that. The Texas court judgment said it would become effective at the time of some subsequent IRS ruling, right? Are you talking about the reformations, your honor? Yes, that was the only Texas court ruling that is issued in this case. Was such a ruling issued, and if so, when? Because I could not tell from reading the briefs. There was a subsequent ruling issued. What had happened is that the Internal Revenue Service, the original order, was effective as of 2005, subject to this condition. A subsequent ruling, yes. In the interim, what the Internal Revenue Service did was to issue a regulation which clarified the generation skipping transfer issues, and in that regulation it said that it would no longer issue rulings on the issue. So that the ability to obtain a ruling was no longer in existence, and the regulation itself satisfied the concerns of the trustee concerning the generation skipping transfer issue. So what the trustee did was to go back to the Texas court and say, the Internal Revenue Service will not issue a ruling. Will you remove that condition from the order, which is what the court did? And now that order stands effective as of 2005. Okay, thank you. You're welcome. Now, as I indicated, the creation of Autonomy Trust was pursuant to a power to distribute the assets, either directly to the current income beneficiary, or in trust for the benefit of the beneficiary of the PG Lynda Trust. Now, in addition to mistakenly holding that Illinois' law governed the Autonomy Trust, the circuit court further erred as a matter of law in holding that a choice of law provision can create the necessary contacts, the necessary minimum contacts, to create taxing jurisdiction under the Due Process Clause and the substantial nexus prong of the Complete Auto Transit Test for Commerce Clause purposes. We know of no case, and the State cites to no case, that holds such a choice of law provision alone will support taxation or taxing jurisdiction, or even in personam jurisdiction. In its reply brief, the State makes no attempt to defend the circuit court's ruling. Instead, the State refers to historical connections, either between the grantor's family in the State, or between the PG Lynda Trust and the State, and all of which predate the creation of the Trust. In the State's view, these connections establish some kind of unbreakable bond between Autonomy Trust and the State that allows the State to treat Autonomy Trust as if it were an Illinois resident during 2006. Let me get into the 1977 Court Reformation proceeding, because I think that's the important factor here. The State incorrectly argues that Autonomy Trust owes its very existence to the Illinois Court's 1977 decision. First of all, it's wrong for the simple reason that what happened in 1977 is not contemporaneous with anything that occurred in 2006, and cannot serve as a basis for imposing taxing jurisdiction in 2006. Second, it is not true that the 1977 proceeding created or validated the powers that were exercised in creating Autonomy Trust. Those powers were in the 1961 Trust Agreement. They were granted to the trustees of PG Lynda Trust by the 1961 Trust Agreement, and they were not affected in any way by the 1977 court proceeding. Would it be true, or is it true, that the Lynda Trust no longer exists? The PG Lynda Trust does exist. Does exist. Correct. And in 2006, it continued as an Illinois taxpayer. The PG Lynda Trust is a resident trust. So it had the power in 2002, I guess, to distribute certain assets from that trust. The trustees did have the power in 2002 to distribute assets to the PG Lynda Trust, and that was the power that they exercised. And no one is disputing that they had that power. Correct. One of the things that the State attempts to do in this case is to mar the waters by citing to Quill, and suggesting that the case law that we have cited in our brief, the Swift case, the Potter and Penoyer cases, the Kassner case, which is a case that was decided after Quill, and the New York case, Mercantile Safe Deposit, are no longer good law. Quill doesn't really change the landscape, as the State suggests, with respect to trust taxation. All the Quill court did was to recognize that, in addition to physical presence, an economic presence could satisfy the minimum contacts requirement of the due process clause, because the benefits and protections afforded to a taxpayer who purposely directs its activities to the residents of taxing states will satisfy that minimum contact. Your time has expired, but we'll hear from you on rebuttal. I wanted to let you finish that thought about Quill. Have you done so? I have one additional thought with respect to Quill, if I may. Please, go ahead. What the Quill court did was to equate taxing jurisdiction to personal jurisdiction. Really, what the court said with respect to personal jurisdiction, and that comes from the International Shoe case, is that if a taxpayer purposely directs its activities toward the forum state or the marketing state or the residents of the state, and takes advantage of its marketplace, that will confer personal jurisdiction. Then what the court does is it draws an analogy between personal jurisdiction and taxing jurisdiction, and basically says if there isn't personal jurisdiction, there can be no taxing jurisdiction. We'll hear from you on rebuttal. Good morning, and may it please the court, I'm Assistant Attorney General Evan Siegel, on behalf of the Illinois Department of Revenue, and its Director Brian Kamer, and Illinois Treasurer Dan Rutherford. I would like to begin by addressing your question about the seal, Your Honors. We did not agree with Mr. Lin's motion to seek that this case be closed to the public, that the MP3 tape be taken off the Internet. The Attorney General believes in open court proceedings, and is an advocate of open proceedings in the FOIA realm, in the courtroom to be sure. We did agree, in a limited sense, in the circuit court, to seal a portion of the record. And I don't know... Were the trial court's proceedings open to the public? I don't know, Justice Turner, if the courtroom's cleared. I do remember something on the transcript from those proceedings where... Did you object to filing the seals on the brief? I did not object. And my recollection is that this all happened very quickly. We did review the motion. The case law that they cited in support really was anomalous. We didn't go along with it. And then your ruling came down almost instantaneously. Well, please convey to the people at the Attorney General's office that we're familiar with the Attorney General's background and our dismay, and I think that's the right word, at the lack of objection at the appellate level and any agreement whatsoever. I mean, this is a... It doesn't get much more public than the courtroom, and this is hardly a juvenile proceeding or other proceedings which ought to be exempt. And as I mentioned to Mr. Marcus, I literally do not recall the request ever before being made in 25 years, much less granted, and I want to make sure that the Attorney General's office understands there's no precedent for this, and they shouldn't be part of it in the future. That's right, Your Honor. I will convey that. Good. Thank you. Your Honors, the Circuit Court's grant, if I may, I want to put this in the context of summary judgment, which is how the case comes to the Court, and talk a little bit about what we had and what we might have had if the facts were slightly different. The Circuit Court's grant of summary judgment to these defendants is correct and should be affirmed because the taxation of the autonomy trust or autonomy for $2,729 violated neither Lynn's due process rights nor the commerce clause of the U.S. Constitution. And turning to the due process issues first, this case was and is subject to summary judgment because there's no disputed issue of fact about two things. Mr. Pritzker and Anne Pritzker, the grantor of the trust, died in 1986 at the age of 90. He was a lifetime Illinois resident. And second, there's no factual issue that he's the grantor of the autonomy trust established in 2002, even though that happened 16 years after his death. Now, as a practical matter, it would be very odd to think that this case would present any sort of constitutional problem if Anne Pritzker were still alive and, in actuality, a living resident of Illinois. It would just strike us as strange. Nor would the plaintiffs really have brought this case, I think it's fair to say, if we were back in the year 2003 or 2004, not long after autonomy came into existence by virtue of Anne Pritzker's status as grantor and the transfer of over a million dollars in cash and stock shares in around 2002 from what the Texas court called the predecessor PG trust. So this court really comes, this case comes to this court for two reasons. First, Mr. Pritzker is deceased and, indeed, pre-deceased, the creation of autonomy. He doesn't have a contemporaneous physical presence in Illinois, to be sure. And the 2006 tax year comes four years after the creation of autonomy. But neither of those points really has any bearing on the constitutional test for due process under the U.S. Supreme Court and the Illinois Supreme Court's cases, which impose equally on corporations and individuals and trusts the requirement of a minimum connection or definite link to the taxing state. What is the definite link? The definite link, Your Honor, is not a formalistic test in the sense that we look at, as Mr. Lynn has argued, who is the trustee, who is the beneficiary. What is the link? I don't want to know what it is, and I want to know what it is. Yes, to answer your question, the link is the fact that autonomy could not and would not exist but for a series of events, protections, and benefits that occurred between 1961 and 2004. We highlighted seven in our brief, and I would like to talk about two of those briefly and turn back to the discussion of the 1977 Cook County decision when the then-trustee, an Illinois resident, sought the clarification of how that trust operated. Lynn is correct, my counsel is correct, that specifically there were certain pieces to that ruling that determined how beneficiaries could act. There was also a ruling about, or a decision about, the charitable impulse, bringing to effect the charitable impulse of A. N. Pritzker. But, and he says that this event is irrelevant because Pritzker's already enjoyed these powers under the 1961 trust agreement. Now, I really don't understand why it was necessary. That case involved, I think, 20 different Pritzker relatives. It went on for two years. The decision itself, which is in the record, is 50 pages. It just seems to me unusual to characterize that decision as an advisory opinion. And it wasn't, because beyond that, the 1977 ruling, the Illinois court decree, really established a template, a principle, if you will, for the creation of the 2002 autonomy trust itself. Again, what the Texas court aptly called a sub-trust. Those trusts have a legal connection. To be sure, they are separate and distinct as a matter of the four corners of the law, but they have a legal connection, and one is the direct descendant of the other. There are several reasons for that. First, the three trustees that you referred to earlier, I believe Justice Kinect, who used the power from the 1961 agreement, Article 9, Section 4, I believe, that agreement. They were all Illinois residents. Thomas Pritzker was a trustee. Marshall Goldberg, I believe, was another. And I forget the name of the third trustee. But those three trustees created the Autonomy Trust 3. And so thinking about the test that Connecticut Supreme Court and the Washington court have used, the trust entity theory, which we've cited, and those cases, incidentally, very much rely on Quill, which I'll talk about in a moment, the creation of that trust could not occur but for that transfer. That is where the trust was created. What about the Mr. Marcus drawing the distinction between the inter vivos trust and the testamentary trust, and he says that's really the difference in this case. Isn't he right that there's a distinction between the two and that this is the inter vivos trust? No, I disagree with that. I think he makes too much of that distinction. To be sure, in the case of testamentary trusts, they owe their existence to Quills. But by the same token of trust, when it's created inter vivos, it owes its existence to a grantor. And so the whole notion, and so there is a direct applicability of the approach. Can an inter vivos trust ever lose the jurisdiction of the state of Illinois? I don't believe it can, Your Honor. So the metaphor that Mr. Marcus used about his daughter growing up in Illinois and Illinois citizen and the benefits of all that, she's moved and she's taken it all with her and she's now in California and she's doing her thing there, and Illinois has got no claim upon her or what she took with her. Isn't that correct? That's what Mr. Marcus says, but it's an inapt analogy. It sounded pretty good to me. Why doesn't it work? For two reasons. First of all, the theory of taxation here is not that the heirs and descendants of Ann Pritzker are being punished for his successes. That's not right at all. Punished is a loaded term. Are they subjected to Illinois' control for purposes of tax, no matter what? Some people would say that tax is punishment. I would say that, yes, they are taxed in perpetuity because the grantor made the decision to create the Intra-Vivos Trust while he was living in Illinois, and then when he passed away it became irrevocable. And so the taxation is not AA because these are the children of Mr. Pritzker. The analogy of the daughter in San Francisco doesn't work because it's the benefits and protections of the state of Illinois, the seven main points that we cite in our brief that facilitate, that allow the trust to come into existence. But the second answer to your question, Justice Steigman, is there's an escape hatch for taxing in perpetuity, and they just haven't exercised that remedy. They haven't discussed it. I think that they could certainly dissolve the trust. They didn't need to create this new trust with the powers that emanate from the 1961 agreement. I don't know what the tax consequences are, if there's a disbursement, but they could at any time dissolve the trust and create a new Texas trust or a Montana trust. Why should, as a matter of law, an intervivalist trust always retain its Illinois connection for tax purposes? I can understand the testamentary trust as being part of the whole disposition of the states and everything, but an intervivalist trust seems to me that that should be portable. Why isn't it? It goes back again to where the grantor resided, and the question under Quill is not a formalistic one that Lynn seeks to impose about who was where, when, and why. It's a flexible approach that asks, what is reason, and can you envision being taxed? And I think it's not unreasonable to imagine, if you ask Dan Pritzker in 1968 or 1970, if he envisioned setting up a Texas trust with a Houston trustee who lives and breathes the air in Houston and might use their fire services, I think that would be the surprise. Not that he was subject to the ongoing jurisdiction and taxation of this state, where he sought to create this. Why would that be a surprise? He gave that authority in the original trust for that very thing to happen. And that's what did happen. He did, Your Honor, but he also chose Illinois trustees initially to administer the 1960s. But he would assume that they would do what was best for the purpose of the trust and to benefit the beneficiaries. And they made the decision to create a new trust which has some connection to the state of Texas and apparently has some connection to the state of Montana as well. Although Mr. Lynn would say that the very same things that Houston provides to the trust, fire departments to protect their paper, if they use paper and not servers, serve electricity and so on, that exists in Montana too. So I don't quite follow why Texas takes precedent over Montana in that analogy. Mr. A. N. Pritzker did provide some powers, but the courts, including the Circuit Court of Cook County, expanded or clarified what those powers would be. That wasn't just a decision that was paper tiger. The very power that you refer to, Justice Kinect, comes from the 1961 trust agreement to enable trustees to appoint successor trustees. And there's something else here that's really important. The buck doesn't stop with Mr. Lynn. There's something in this trust, this autonomy trust, called the trust protector, and that person can invalidate all of his decisions, dissolve the trust. That person is also a resident of Texas for purposes of tax year 2006. No, Your Honor, he's a resident of Connecticut. Okay, Connecticut, but not of Illinois anyway. The original one was from Illinois. For one year.  So the power may lie in Connecticut. The trust may be administered. Let's call them up and see if we can get somebody taxed there. Well, they would certainly be subject to the Supreme Court ruling in Gavin, which we urge this court to follow because the analysis of both the inter vivos and the testamentary trust there. In Gavin, the contingent beneficiary was a resident of Connecticut for the inter vivos trust. That's correct, Your Honor. We don't have that here. You're absolutely correct. But there's a distinction in the statute that I wanted to bring out. The Connecticut statute provides that taxation, like ours, that taxation on the grant form is the way that income is taxed. In addition, there's an opt-out or a second provision that says that you can tax based on where the beneficiary lives. Now Gavin says, the dissent in Gavin says that the majority focused on the trust form, sorry, the grant form aspect of that. The case makes clear that it's the benefits and protections that inure to the trust that makes the taxation based on either the grant form or the beneficiary, the sufficient nexus, sorry, sufficient content for due purpose processes. If we had an example, a case slightly different than Gavin, where the beneficiary, where there was no in-state beneficiary and we just had a Connecticut grant form, there would be no doubt that taxation of the income on that trust would be consistent with due process under the statute in Gavin. You know, there are excellent practical reasons as well for tying taxation to where the grant form was a resident. Best predictability and consistency for the department and for the court system. You know, where the trustee lives can change from year to year. It can change from state to state. This year it's Texas and next year maybe it's offshore someplace. But when it's tied to the grant form, we know where it is and where it existed. There is no confusion. And that's how other states work this. And that's how the Illinois legislature decided to approach this question. What Lynn seeks, though, is a radical departure from the established standard under Quill because they are fixated on physical presence. I think the council said something about minimizing physical presence and something else. Well, it's not physical presence at all, but he wants to read into the due process clause a requirement that every human grantor of every trust ever created in the state of Illinois be alive and corporally present in the confines of the state for time immemorial. That in essence, that people be immortal. But they're not. Even corporations are not immortal. And a trust doesn't die when the grantor dies. The very purpose of the trust is to enable the distribution of assets across generations. Do you agree that Quill equated taxing jurisdiction to personal jurisdiction? Yes. Because that's the way I read it. Yes, it did. Okay. We've got all of the trust business being conducted in Texas. Correct? Possibly. We don't know if the... Okay, none in Illinois. The trustee, the protector, the non-contingent beneficiary, even the contingent beneficiary reside outside of Illinois. None of the trust property is in Illinois. How do you possibly establish personal jurisdiction under those facts? Well, Quill doesn't require physical presence anymore. And the example that you just provided, Justice Turner, again, goes back to who is where, who is sitting in Billings, Montana, who is in Houston, what are they doing, which one takes precedent. Okay, where is the minimum contact with Illinois? Other than the grantor in 1961 or two, whatever it was. The seven incidents that we cite at length, including the two that I discussed, but for that history and those events, the protections that we cite on page 35 of our brief, the very same protections, the very same type of protections, incidentally, that are what a civilized society provides in Houston, exist, they not only have existed for the trust and the beneficiary, they exist in the future. We believe there is a jurisdictional basis for Ms. Pritzker or her non-contingent beneficiary to avail themselves of those protections in the future, should they seek to. I think Mr. Marcus' daughter is going to have to start paying taxes in Illinois because she received health care here, she drove on the roads here, she may have been educated here, maybe she was created here. And if we float this idea across the street, I'm reasonably sure that someone will take up the idea that non-residents can be taxed because they would not exist but for the fact that they were created here. Maybe that's a good idea, I don't know. Quill dictates a different answer. It doesn't require the physical presence. And again, we're not taxing based on who the children are. We would ask your honors to term the circuit court on both the due process issue and the commerce clause issue on which I stand on my brief. Thank you. Mark's here. All these connections that the state refers to, the connections between A.N. Pritzker, the grantor and the state, his family and the state, and the 20 trusts that were created under the 1961 trust agreement are historical connections. They don't satisfy the contemporaneous requirement of the due process clause. There is no connection between what occurred prior to 2002, the date on which Autonomy Trust was created,  those historical connections have no relevancy whatsoever to Autonomy Trust. Autonomy Trust is a separate trust. It has separate trustees. The terms of the agreement are different or the provisions of the agreement are different. The choice of law provision in each trust is different. The trust is administered, Autonomy Trust is administered in Texas. The P.G. Linda Trust and the other trusts are administered here in Illinois. Historical connections play absolutely no role in the question of whether or not there are sufficient contacts or benefits or protections provided to Autonomy Trust in the 2006 tax year. The state cites to the Gavin and the Chase Manhattan, by Chase Manhattan I mean the District of Columbia case. Well, first of all, there is a distinction between testamentary trusts and interbiposal trusts. Testamentary trusts are generally subject to the continuing supervision of the probate courts. Interbiposal trusts are created without court supervision. There is no question about that. The various cases that are cited by both the state and by us in the briefs, there is one thing in common with all those states, all those cases. With respect to residency of the grantor, Illinois in 2006 was in the minority of states. There were no states that looked to residency as the sole basis for the taxation of trusts. If you look at these additional cases that are cited in the brief, the Swift case, the Potter-Pannoyer, the Kasner case, which I mentioned was just recently decided, the Mercantile Safe case, the Chase case, and the Gavin case, there is always something else required in addition to the residency of the grantor. And that is either the presence of the trustee in the state or the presence of a non-contingent beneficiary in the state. If you look at each one of those cases, that's the additional factor that's required and that's what's missing here. With respect to Quill, again, all Quill really did was to say that in addition to physical contacts, economic contacts would be sufficient. But the trust that we're talking about here, Autonomy Trust, its economic contacts are with the state of Texas. They're not with the state of Illinois. That's where the business is conducted, that's where it's administered. And as I indicated at the outset, if this trust had Illinois source income, it would be subject to tax on that income in the state of Illinois. And that is just not the case in the 2006 year or, well, I can't address any other year. In 2006, there is no Illinois source income. Just in conclusion, I would suggest Autonomy Trust does not satisfy the minimum contacts test of the Due Process Clause or the substantial nexus prong of the Commerce Clause. I would also suggest that there are no benefits or protections afforded to either Autonomy Trust or its beneficiary in the 2000 tax year. As I indicated, all those contacts are historical and they're between the grantor of the trust, his family in the state, and the P.G. Lyndon Trust. The P.G. Lyndon Trust is not its predecessor trust. It's a term that the Texas court used, called it a sub-trust, but it's not. that was created pursuant to the power to distribute assets. And I would ask that for the reasons that I've stated here and for the reasons cited in our briefs, that the court reverse the court's decision granting summary judgment and enter summary judgment in favor of plaintiff Mr. Lyndon, trustee of the Autonomy Trust. Thank you, Counsel. I would like to suggest that simply because Justice Steigman is the only one that spoke and used the term dismay, it is shared by the panel. And the other two of us weren't going to remonstrate with you or the Attorney General at the same time. It's not necessary. You're right. That ruling has occurred. But it would be nice if the message went forth that we do not view favorably the closing of court proceedings or the sealing of documents. Your Honor, I get the message strongly. Thank you. Take the matter under advisement.